18-943-cr
*United States v. Al Farekh*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand twenty.

PRESENT:   JOSÉ A. CABRANES,
                    RAYMOND J. LOHIER, JR.,
                                *Circuit Judges*,
                    CHRISTINA REISS,
                                *District Judge.* [*]

---

UNITED STATES OF AMERICA,

        *Appellee*,                                              18-943-cr

        v.

MUHANAD MAHMOUD AL FAREKH,

        *Defendant-Appellant.*

---

**FOR APPELLEE:**                                    RICHARD M. TUCKER, Assistant United
                                                                  States Attorney (David C. James, Douglas
                                                                  M. Pravda, Saritha Komatireddy, Assistant
                                                                  United States Attorneys; Alicia Cook,

---

[*] Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

1

Trial Attorney, Counterterrorism Section, United States Department of Justice, Washington, D.C., *on the brief*), *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY.

**FOR DEFENDANT-APPELLANT:** LAWRENCE M. STERN (Robert J. Boyle, *on the brief*), New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Muhanad Mahmoud Al Farekh ("Al-Farekh") appeals from a judgment convicting him, following a jury trial, of: use of explosives; conspiracy to murder U.S. nationals; conspiracy to use a weapon of mass destruction; conspiracy to use a weapon of mass destruction by a U.S. national; conspiracy to bomb a U.S. government facility; conspiracy to provide, attempt to provide, and provision of material support to terrorists; and conspiracy to provide, attempt to provide, and provision of material support to the Foreign Terrorist Organization al-Qaeda. The District Court sentenced Al-Farekh principally to 45 years' imprisonment.

On appeal, Al-Farekh challenges a series of evidentiary rulings, as well as the District Court's denial of his request to declare a mistrial. In addition, Al-Farekh challenges the substantive reasonableness of his sentence. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

In an opinion filed simultaneously herewith, we reject Al-Farekh's challenges to the handling of the Government's motions filed pursuant to the Classified Information Procedures Act, the admission of an out-of-court photo identification of Al-Farekh, and the limitation on Al-Farekh's cross-examination of the Government's fingerprint examiner. We now address the remainder of Al-Farekh's arguments and conclude that the judgment of conviction and sentence should be affirmed.

### I.     The District Court's Evidentiary Rulings

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was 'manifestly erroneous.'" *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015)

(quoting *United States v. Samet*, 466 F.3d 251, 254 (2d Cir. 2006)). Where we find an abuse of discretion, "vacatur is required unless we are 'convinced that the error was harmless beyond a reasonable doubt.'" *United States v. Mejia*, 545 F.3d 179, 199 (2d Cir. 2008) (quoting *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006)).

In determining whether an erroneous admission was harmless, we consider: "(1) the overall strength of the prosecutor's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *United States v. Gomez*, 617 F.3d 88, 95 (2d Cir. 2010) (quotation marks and citation omitted).

## A. Written Communications by Co-Conspirators Imam and Yar

Al-Farekh argues on appeal that the District Court erred when it admitted into evidence an e-mail by Ferid Imam and two letters by Maiwand Yar, Al-Farekh's co-conspirators. According to Al-Farekh, these statements are irrelevant and contain hearsay that does not fall into any hearsay exception.

On review, we conclude that the District Court did not abuse its discretion in admitting the written communications by Imam and Yar. We do so for substantially the reasons given by the District Court in its thorough September 13, 2017 Decision and Order granting the Government's motion *in limine* to admit Imam's e-mail and Yar's letters. *See* Appellant's App'x ("App'x") at 49–55.

## B. Al-Farekh's Handwritten Letters

We also reject Al-Farekh's argument that the District Court abused its discretion by admitting the handwritten letters that were found in a USB drive that was handed to an agent of the Federal Bureau of Investigation in Afghanistan. Al-Farekh contends that these letters should have been excluded because they were not authenticated.

We disagree. Although the Government did not present evidence regarding the circumstances surrounding the seizure of the USB drive, Federal Rule of Evidence 901(b)(4) permits authentication based on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." The Government satisfied Rule 901(b)(4) here. For example, the letters were signed in Arabic text "Abdullah" or "Abdullah al-Shami," the kunya that the Government witness Sufwan Murad, a former al-Qaeda collaborator, attributed to Al-Farekh. The Government also presented expert testimony that there were considerable similarities between the handwriting in the letters in the seized USB drive and the known samples of Al-Farekh's handwriting. Finally, the content of the letters—namely, the author's desire to wage violent jihad against the United States and the fear for his safety as a leader in al-Qaeda's external operations division—are consistent with Murad's description of Al-Farekh. In light

of the totality of the circumstances, the District Court did not abuse its discretion in finding that the proof of authentication was sufficient to pass the relatively low bar for authentication of evidence, *see United States v. Al-Moayad*, 545 F.3d 139, 172–73 (2d Cir. 2008), and that any remaining questions as to the reliability of the letters go to their evidentiary weight, not their admissibility, *see* App'x at 39–40.

### C. The Testimony of Professor Lorenzo Vidino, the Testimony of Evan Kohlmann, and the Video of a Controlled Detonation

We similarly reject Al-Farekh's challenge to the admission of: (1) expert testimony by Professor Vidino, Director of the Center on Extremism at George Washington University, on the absence of a single jihadist profile and the routes commonly used to travel to join al-Qaeda in the Middle East; (2) testimony by fact witness Evan Kohlmann, founder of a company that collected online information on al-Qaeda and disseminated threat intelligence reports to clients, summarizing certain lectures of Anwar al-Awlaki, as well as the excerpts from certain jihadist materials; (3) a one-minute, 40-second-long video depicting the controlled detonation of a vehicle-borne improvised explosive device, the type of bomb that was used in a terrorist attack against a U.S. military base in Afghanistan and on which Al-Farekh's fingerprints were found. We find no error in the admission of this evidence and conclude that the District Court's analysis under Rule 403, which is entitled to considerable deference on appeal, *see United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011), was not "manifestly erroneous," *McGinn*, 787 F.3d at 127 (quoting *Samet*, 466 F.3d at 254).

Even if we were to assume, for the sake of argument only, that the District Court erred in admitting the testimony of Professor Vidino, the testimony of Kohlmann, or the detonation video, any such error would have been harmless in light of, among other things, the strength of the Government's case against Al-Farekh. *See United States v. Stewart*, 907 F.3d 677, 689 (2d Cir. 2018) ("We have repeatedly held that the strength of the government's case is the most critical factor in assessing whether error was harmless." (quotation marks omitted)).

### D. Limitations on the Cross-Examination of Sufwan Murad

Al-Farekh also disputes the District Court's decision to permit Murad to testify using a pseudonym and to limit the scope of the cross-examination to preclude Al-Farekh's counsel from eliciting testimony about Murad's identity, country of origin, nationality, location, and ongoing cooperation with authorities. Al-Farekh contends that this decision violated his rights under the Confrontation Clause.

The Confrontation Clause protects a criminal defendant's right to cross-examine the prosecution's witnesses. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). That right, however, is not absolute. Trial judges have "wide latitude . . . to impose reasonable limits . . . on . . . cross-examination based on concerns about, among other things, harassment, prejudice, . . . or the

4

witness' safety." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006). Although we generally review a limitation on the scope of a defendant's cross-examination of a Government witness for an abuse of discretion, when the limitation directly implicates the defendant's constitutional rights under the Confrontation Clause, we review the ruling *de novo. See Vitale*, 459 F.3d at 195.

We find no error in the District Court's evidentiary ruling. As a threshold matter, Al-Farekh does not present any evidence undermining the Government's reasonable assertion that the safety of Murad, a former al-Qaeda collaborator who assisted in counterterrorism investigations, may be in fact jeopardized in the absence of the District Court's protective order. Moreover, the narrowly tailored limitations on Al-Farekh's cross-examination are consistent with limitations that this Court has upheld as appropriate to protect the safety of witnesses. *See, e.g., United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979) (upholding limitation on cross-examination that precluded, among other things, questions concerning the witness's "employment, whether he was supporting his family, and the price of his automobile," in order to permit the witness "to maintain his concealed identity" as part of his enrollment in Witness Protection Program), *modified on other grounds*, 633 F.2d 1041 (2d Cir. 1980) (en banc); *United States v. Cavallaro*, 553 F.2d 300, 304–05 (2d Cir. 1977) (upholding limitation on cross-examination that precluded questions concerning the kidnapping victim's current address).

Al-Farekh was aware of Murad's identity in advance of the deposition, as the Government did not seek to limit its disclosures to Al-Farekh on this subject. And Al-Farekh was permitted to explore Murad's alleged biases and motivations for lying during his cross-examination. Accordingly, we conclude that the District Court's limitation on the cross-examination of Murad's testimony was reasonable and did not violate Al-Farekh's rights under the Confrontation Clause.

## II.     The Denial of Al-Farekh's Request for a Mistrial

Al-Farekh challenges the District Court's denial of his motion to excuse one of the jurors and, in the alternative, for a mistrial. Al-Farekh moved for a mistrial after the first day of deliberations, following an incident in which Juror 4 reported to the District Court that he had heard that Al-Farekh's father had boarded an elevator with another juror, but that Juror 4 was not aware of what, if anything, the father had said to the other juror.

We review the District Court's denial for abuse of discretion. *See United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011). Under *Remmer v. United States*, 347 U.S. 227 (1954), we start with a presumption of prejudice from a jury's exposure to extra-record evidence. *See Farhane*, 634 F.3d at 168–69 (citing *Remmer*, 347 U.S. at 229). That presumption, however, may be rebutted by a "showing that the extra-record information was harmless." *Id.* at 168 (quotation marks omitted). To determine if the presumption is properly rebutted, we must consider the "(1) the nature of the information or contact at issue, and (2) its probable effect on a hypothetical average jury." *Id.* at 169.

On review, we conclude that the District Court did not abuse its discretion in refusing to excuse Juror 4 and to grant Al-Farekh's request for a mistrial. Juror 4's access to extra-record information in this case—hearing that Al-Farekh's father boarded an elevator in the courthouse with a juror—is "harmless." *Id.* at 168. Juror 4 had no knowledge about any conversation between Al-Farekh's father and any jurors. Moreover, the District Court took several important steps to remedy any potential prejudice, including conducting individualized inquiries of all jurors and alternate jurors and issuing two instructions to the jury that were consented to by both the Government and Al-Farekh. More importantly, Juror 4 indicated to the District Court that the reported extra-record information will not affect his ability to be a fair juror in the case.

Under the circumstances presented, in light of the innocuous nature of the extra-record information, the District Court's reasonable and precautionary measures to minimize the risk of prejudice, and the juror's assurances to remain impartial, we conclude that the *Remmer* presumption was properly rebutted and thus find no abuse of discretion. *See Farhane*, 634 F.3d at 168–69; *see also United States v. Sun Myung Moon*, 718 F.2d 1210, 1219 (2d Cir. 1983) ("Absent a clear abuse of the trial court's discretion, one that results in manifest prejudice to defendants, the finding made that the jury was fair and unbiased must be upheld.").

### III.    Substantive Reasonableness of the Sentence

Al-Farekh also challenges the substantive reasonableness of his 45-year prison sentence, which we review "under a deferential abuse-of-discretion standard." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (citation omitted). Our review of a sentence for substantive reasonableness is "particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). We will set aside a sentence as substantively unreasonable only if it is "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *Id.* (internal quotation marks omitted).

Al-Farekh's challenge to his sentence is meritless. Contrary to Al-Farekh's assertion, the District Court specifically considered the letters from Al-Farekh's friends and family and Al-Farekh's own letter. Notably, the letters submitted on Al-Farekh's behalf describe the young teenager who went to college at the University of Manitoba prior to his departure for Pakistan in 2007. These letters provide little, if any, insight into the mindset or character of the adult who traveled to Pakistan to join a terrorist organization to perpetrate violent attacks against military and civilian personnel. Moreover, Al-Farekh's own letter was "not an enthusiastic acceptance of responsibility or expression of remorse." App'x at 565.

In light of the severity of Al-Farekh's conduct, we conclude that a 45-year sentence of imprisonment is simply not substantively unreasonable.

6

## CONCLUSION

We have reviewed all of the arguments raised by Al-Farekh on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court